**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-12-0001085**
**30-NOV-2016**
**09:31 AM**

NOS. CAAP-13-0003274, CAAP-13-0000406 and CAAP-12-0001085

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


SHAUN WRIGHT and ANNETT WRIGHT,
Plaintiffs/Counterclaim Defendants/Appellees,
v.
MIYAKE CONCRETE ACCESSORIES, INC., DOE DEFENDANTS 1-100,
Defendant/Counterclaim-Plaintiff/
Third-Party Plaintiff/Appellant,
and
MIYAKE CONCRETE ACCESSORIES, INC.,
Third-Party Plaintiff/Appellant,
v.
SAMUEL S. KIYABU, dba KIYABU CONSTRUCTION, INC.,
SANDPIPER CONSTRUCTION, INC., a Hawaii corporation,
DESPINS GENERAL CONSTRUCTION, INC., a Hawaii corporation,
BRIAN SHIMOMURA and BRIAN SHIMOMURA AND ASSOCIATES, LLC,
a Hawaii Limited Liability Company, JOHN DOES 1-10,
Third-Party Defendants/Appellees,
(CIVIL NO. 09-1-0748(3))


DESPINS GENERAL CONSTRUCTION, INC.,
Plaintiff/Counterclaim-Defendant/Appellee,
v.
SHAUN WRIGHT and ANNETT WRIGHT,
Defendants/Counterclaim-Plaintiffs/Appellees,
and
SHAUN WRIGHT and ANNETT WRIGHT,
Counter-Claimants/Appellees,
v.
DESPINS GENERAL CONSTRUCTION, INC.,
Counter-Defendant/Appellee
(CIVIL NO. 10-1-0191(3))

MIYAKE CONCRETE ACCESSORIES, INC., a Hawaii Corporation,
Plaintiff/Appellant,
v.
BRIAN S. SHIMOMURA and BRIAN SHIMOMURA AND ASSOCIATES, LLC,
a Hawaii Liability Company, Defendants/Appellees
(CIVIL NO. 11-1-0153(3))

APPEALS FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Reifurth and Ginoza, JJ.)

In this consolidated appeal, Defendant/Third-Party Plaintiff-Appellant Miyake Concrete Accessories, Inc. **(Miyake)** appeals from the following orders filed in the Circuit Court of the Second Circuit **(circuit court)**[1]:

(1) the "Order Denying Defendant and Third-Party Plaintiff Miyake Concrete Accessories, Inc.'s Motion for Relief from Court Ordered Settlement Agreement Filed on August 15, 2012; Order Granting Plaintiffs Shaun and Annett Wright's Motion to Compel Compliance with Settlement Agreement and Order Filed on August 10, 2012" **(Order Denying Motion for Relief from Settlement Agreement; Order Granting Motion to Compel Compliance With Settlement Agreement)**, filed on November 15, 2012;

(2) the "Order Denying Defendant and Third-Party Plaintiff Miyake Concrete Accessories, Inc.'s Motion to Set Aside Garnishee Summons Filed February 13, 2013, and to Release Garnishees Bank of Hawaii, First Hawaiian Bank, and Central Pacific Bank, Filed February 21, 2013, and Garnishee Order" **(Order Denying Motion to Set Aside Garnishee Summons)**, filed on April 8, 2013; and

(3) the "Order Granting in Part and Denying Without Prejudice in Part Plaintiffs Shaun and Annett Wright's Motion to Compel Defendant Miyake Concrete Accessories Inc. to Execute a Stipulation for Partial Dismissal With Prejudice in Accordance With the Parties' Settlement Agreement and for Award of Attorneys' Fees and Costs Filed June 14, 2013" **(Order to Execute Stipulation for Dismissal with Prejudice)**, filed on September 3, 2013.

---

[1] The Honorable Joseph E. Cardoza presided.

On appeal, Miyake contends the circuit court: (A) erred when it denied Miyake's Motion for Relief from the Settlement Agreement; (B) erred when it granted Plaintiffs-Appellees Shaun and Annett Wrights' **(the Wrights)** Motion to Compel Compliance with Settlement Agreement; (C) erred when it denied Miyake's Motion for Leave to File Supplemental Answer and Counterclaim; (D) lacked jurisdiction and erred when it granted the Wrights' Motion for Entry of Judgment; (E) lacked jurisdiction and erred when it issued the garnishee summons and erred when it awarded attorneys' fees and costs; and (F) lacked jurisdiction and erred when it granted in part and denied in part the Wrights' Motion to Compel Miyake to Execute Stipulation for Partial Dismissal.

For the reasons discussed below, we affirm in part, vacate in part, and remand for further proceedings.

## I. Background

This appeal involves challenges to post-judgment orders related to a Settlement Agreement entered into with the intent of settling three consolidated civil proceedings.[2] The consolidated civil proceedings all arose from contract disputes related to the construction of the Wrights' home in Kula, Maui, Hawaiʻi.

On January 25, 2012, the Wrights, Miyake,[3] Despins General Construction, Inc. **(Despins)**,[4] and Brian Shimomura and Brian Shimomura & Associates, LLC **(Shimomura)**[5] entered the terms

---

[2] The three civil proceedings are: (1) Wright v. Miyake, Civil No. 09-1-0748(3); (2) Despins v. Wright, Civil No. 10-1-0191(3); and (3) Miyake v. Shimomura, Civil No. 11-1-0153(1).

[3] On November 27, 2006, Miyake as Surety signed a Uniform Performance Bond, Assignment of Contract and Agreement Bond (Uniform Performance Bond). Miyake agreed that in the event that Samuel S. Kiyabu dba S. Kiyabu Construction (Kiyabu) (the general contractor for the Wrights' home) defaulted under the construction contract with the Wrights, Miyake, "shall within thirty (30) days of determination of such default, take over and assume completion of said Contract and become entitled to the payment of the balance of the contract price."

[4] The Wrights hired Despins as their general contractor after Kiyabu defaulted on its obligation as general contractor under the contract for the construction of the Wrights' home.

[5] Shimomura was the architect of record for the construction of the Wrights' home.

3

of their Settlement Agreement onto the record. The terms of the Settlement Agreement were, in pertinent part, as follows: (1) the total settlement amount was $390,000 to be paid to the Wrights consisting of $90,000 held by First Hawaiian Bank, $150,000 paid on behalf of Miyake, $75,000 paid on behalf of Despins, and $75,000 paid on behalf of Shimomura; and (2) "[t]he settlement agreement will be a mutual release and indemnity agreement. All the parties will be releasing all other parties in this case and all claims against each other that have been made or could have been [made] in this lawsuit." Each party confirmed on the record that they agreed to the terms of the Settlement Agreement.

On May 25, 2012, Miyake filed a Motion to Enforce Settlement Agreement.[6] Miyake argued that the parties had agreed to all the terms and language in the Settlement Agreement except for the language of the mutual indemnification provision that was agreed to on the record on January 25, 2012. Miyake included in its motion a mutual indemnity provision that it argued should be enforced because it accurately reflected the terms agreed to on the record. On June 18, 2012, Despins filed a Memorandum in Opposition to Miyake's Motion to Enforce Settlement Agreement or in the Alternative Cross-Motion to Enforce Settlement Agreement. Despins requested that the circuit court deny Miyake's Motion to Enforce Settlement Agreement and instead grant and enforce the Settlement Agreement that Despins attached to its memorandum, which it claimed accurately reflected the settlement agreement the parties had entered onto the record on January 25, 2012.

On June 20, 2012, the circuit court filed an "Order (1) Denying [Miyake's] Motion to Enforce Settlement Agreement; (2) Denying [Despins'] Cross-Motion to Enforce Settlement Agreement; and (3) Issuing Court's Order Enforcing Settlement Agreement" **(Order Enforcing Settlement Agreement)**. In the order, the circuit court stated that Miyake's and Despins' proposed

---

[6] Many of the filings in this case were filed ex officio in the Circuit Court of the First Circuit. "The ex officio filing date of any document prevails over the file-stamped date to the extent that the dates differ from each other." Cochrane v. Azman, No. 29562, 2011 WL 661714, at *1 n.3 (Haw. App. Feb. 22, 2011) (mem. op.) (citations omitted).

4

settlement agreements were identical except for

> (1) the language in paragraph 4 of each proposed settlement agreement relating to mutual indemnity, (2) DESPINS' proposed settlement agreement contains an additional paragraph, to wit, paragraph 10 relating to surety's reservation of rights, and (3) because of the additional paragraph in DESPINS' proposed settlement agreement, all subsequent paragraphs are one number higher than the same paragraphs in MIYAKE'S proposed settlement agreement.

The circuit court concluded:

> While the parties have been unable to agree on the specific language for the mutual indemnity paragraph, there is no dispute that on January 25, 2012 the parties placed on the record the essential terms of their settlement agreement. With respect to mutual indemnity, the parties confirmed on the record the following agreement:
>> The settlement agreement will be a mutual release and indemnity agreement. All parties will be releasing all other parties in [these cases] and all claims against each other that have been made or could have been [made] in [these lawsuits].
> There is no dispute concerning what was placed on the record on January 25, 2012. Accordingly, the court will enforce the mutual indemnity language agreed to by the parties at the time the settlement agreement was placed on the record and not the language proposed by MIYAKE and DESPINS.

On August 10, 2012, the Wrights filed a Motion to Compel Compliance with Settlement Agreement and Order. In the Memorandum in Support of Motion, the Wrights stated, "[t]o date, Miyake has not complied with the terms of the settlement agreement by paying the required consideration" and "the Wrights have not received any payments from the parties of the consideration due under the terms of the parties' settlement agreement."

On August 15, 2012, Miyake filed a Motion for Relief From Settlement Agreement pursuant to Hawaiʻi Rules of Civil Procedure (HRCP) Rule 7 and 60(b).

On September 25, 2012, Miyake filed a Motion for Leave to File First Supplemental Answer and Counterclaim Against the Wrights. Miyake contended that new transactions, occurrences, and events happened since Miyake filed its Answer on November 5, 2009, "which entitle Miyake to supplement said Answer with affirmative defenses against the Wrights' claim for payment under the Settlement Agreement and to also supplement said Counterclaim by adding claims for declaratory judgment, breach of the

Settlement Agreement and impairment of Miyake's suretyship status."

On November 15, 2012, the circuit court filed the Order Denying Motion for Relief from Settlement Agreement; Order Granting Motion to Compel Compliance With Settlement Agreement. In the order, the circuit court directed and ordered the Clerk of the Court to sign the Settlement Agreement on behalf of any party who did not submit their signature pages by November 13, 2012.

On December 17, 2012, Miyake filed a Notice of Appeal from the Order Denying Motion for Relief from Settlement Agreement; Order Granting Motion to Compel Compliance With Settlement Agreement, which became appellate case No. CAAP-12-1085.

On December 17, 2012, the circuit court filed an Order Denying Miyake's Motion for Leave to File First Supplemental Answer and Counterclaim Against the Wrights **(Order Denying Motion for Leave to File First Supplemental Answer and Counterclaim)**.

On December 21, 2012, the Wrights filed a Motion for Entry of Judgment, requesting a Judgment in favor of the Wrights and against Miyake to effectuate the terms and intent of the Settlement Agreement and the Court's Order Compelling Compliance. On January 2, 2013, Miyake filed a Memorandum in Opposition to the Wrights Motion for Entry of Final Judgment. On February 11, 2013, the circuit court filed an Order Granting the Wrights' Motion for Entry of Judgment. However, the record does not reflect that a Judgment was thereafter entered.

On February 13, 2013, the Wrights filed five (5) separate Ex Parte Motions for Issuance of Garnishee Summons, in which the Wrights requested that the circuit court issue Garnishee Summons directed to Central Pacific Bank, First Hawaiian Bank, Bank of Hawaii, Territorial Savings Bank, and American Savings Bank. The circuit court granted all five of the motions.

On February 21, 2013, Miyake filed a Motion to Set Aside Garnishee Summons. On April 8, 2013, the circuit court filed the Order Denying Motion to Set Aside Garnishee Summons, which included an order that First Hawaiian Bank "pay the Wrights

the sum of $150,000.00, interest of $4,767.60 plus per diem interest of $41.10 after March 15, 2013, attorneys' fees of $21,882.67 and costs of $1,586.33."

On April 12, 2013, Miyake filed a Notice of Appeal, appealing from the Order Denying Motion to Set Aside Garnishee Summons, which became appellate case No. CAAP-13-406.

On June 14, 2013, the Wrights filed a Motion to Compel Miyake to Execute a Stipulation for Partial Dismissal in Accordance with the Parties' Settlement Agreement and For Award of Attorneys' Fees and Costs. The Wrights sought an order compelling Miyake to execute a stipulation for partial dismissal of all claims by and against Despins and Shimomura.

On July 3, 2013, the circuit court held a hearing regarding the Wrights' Motion to Compel Miyake to Execute a Stipulation for Partial Dismissal. At the hearing, the court orally ordered the parties to sign a stipulation according to what they agreed to in the Settlement Agreement, which provides for all parties dismissing all claims, not a partial dismissal. The circuit court also authorized the Clerk of Court to execute the stipulation if the stipulation was not signed within seven (7) days of the hearing.

On July 15, 2013, a Stipulation for Dismissal with Prejudice of All Claims and All Parties was filed, in which the Wrights, Miyake, Despins, and Shimomura stipulated, pursuant to HRCP Rule 41(a)(1)(B), that the Complaints, Third-Party Complaints, Counterclaims, Cross-Claims, and other claims were dismissed with prejudice. Counsel for the Wrights, Despins, and Shimomura signed the stipulation and the Clerk of Court signed for Miyake's counsel. On September 3, 2013, the circuit court filed the Order to Execute Stipulation for Dismissal with Prejudice.

On September 6, 2013, Miyake filed its Notice of Appeal from the Order to Execute Stipulation for Dismissal with Prejudice, which became appellate case No. CAAP-13-3274.

## II. Standards of Review

### A. HRCP Rule 60(b)

"A circuit court's denial of a motion for relief from judgment filed pursuant to HRCP Rule 60(b) is reviewed for abuse of discretion." Leslie v. Estate of Tavares, 91 Hawai'i 394, 399, 984 P.2d 1220, 1225 (1999). "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." Id. (citation omitted).

### B. Motion to Set Aside Garnishee Order

> The decision whether to grant or deny a motion to dissolve a garnishee order is a question of law. "Questions of law are reviewable de novo under the right/wrong standard of review." *Ditto v. McCurdy*, 90 Hawai'i 345, 351, 978 P.2d 783, 789 (1999) [citations omitted]. Under the de novo or right/wrong standard, this court "examine[s] the facts and answer[s] the question without being required to give any weight to the trial court's answer to it." *Pelosi v. Wailea Ranch Estates*, 91 Hawai'i 478, 487, 985 P.2d 1045 (1999).

Bank of Haw. v. DeYoung, 92 Hawai'i 347, 351, 992 P.2d 42, 46 (2000).

### C. Statutory Interpretation

The interpretation of a statute is a question of law reviewable de novo under the right/wrong standard. Id.

## III. Discussion

### A. Jurisdiction Over Points of Error C and D.

This case involves three appeals from three "post-judgment" orders. The appealable "judgment" was the June 20, 2012 Order Enforcing Settlement Agreement because under the collateral order doctrine, an order enforcing a settlement agreement is a collateral order which is appealable.[7] Cook v. Sur. Life Ins., Co., 79 Hawai'i 403, 407-08, 903 P.2d 708, 712-13 (App. 1995). The June 20, 2012 Order Enforcing Settlement Agreement qualifies as a "judgment" for purposes of the civil

---

[7] "A collateral order is in that small class of orders which finally determines claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cook v. Sur. Life Ins., Co., 79 Hawai'i 403, 407, 903 P.2d 708, 712 (1995) (citation, internal quotation marks, and brackets omitted).

procedure rules because under HRCP Rule 54(a), a "'[j]udgment" as used in these rules includes a decree and <u>any order from which an appeal lies</u>." (Emphasis added.) None of the parties appealed from the Order Enforcing Settlement Agreement and therefore this court does not have jurisdiction to review the Order Enforcing Settlement Agreement.

However, once the circuit court entered the appealable "judgment" (i.e., the Order Enforcing Settlement Agreement), any subsequent post-judgment orders are appealable final orders under Hawaii Revised Statutes (HRS) § 641-1(a) (Supp. 2015) "if the order[s] end[ed] the proceedings, leaving nothing further to be accomplished." <u>Ditto v. McCurdy</u>, 103 Hawai'i 153, 157, 80 P.3d 974, 978 (2003). The three orders from which Miyake appealed — the (1) Order Denying Motion for Relief from Settlement Agreement; Order Granting Motion to Compel Compliance with Settlement Agreement; (2) Order Denying Motion to Set Aside Garnishee Summons; and (3) Order to Execute Stipulation for Dismissal with Prejudice — are all final appealable post-judgment orders because they ended the proceedings associated with each order, leaving nothing further to be accomplished. Thus, we have jurisdiction over the points of error related to the three orders from which Miyake appealed. In these circumstances, where Miyake appeals from post-judgment orders and did not appeal from a final judgment on all claims, "this court will only consider other orders which were preliminary rulings upon which the subject Order was predicated or were part of the series of orders which collectively led to that Order." <u>Cook</u>, 79 Hawai'i at 409, 903 P.2d at 714.

In its opening brief, Miyake raises two points of error (points of error C and D) related to two orders that were not referenced in any way in Miyake's notices of appeal. In point of error C, Miyake challenges the circuit court's Order Denying Motion for Leave to File First Supplemental Answer and Counterclaim. In point of error D, Miyake challenges the circuit court's Order Granting Motion for Entry of Judgment. Neither of the orders addressed in points of error C or D "were preliminary rulings upon which [an appealed order] was predicated or were

part of the series of orders which collectively led to [the appealed order]. <u>Cook</u>, 79 Hawaiʻi at 409, 903 P.2d at 714; <u>see also</u> <u>Chun v. Bd. of Trs. Of Emps. Ret. Sys.</u>, 92 Hawaiʻi 432, 448, 992 P.2d 127, 143 (2000) ("The notice of appeal 'shall designate the judgment, order[,] or part thereof appealed from.'" (quoting Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 3(c) (1996)).

Therefore, we lack appellate jurisdiction to address Miyake's points of error C and D regarding the Order Denying Motion for Leave to File First Supplemental Answer and Counterclaim and the Order Granting Entry of Judgment.

### B. Order Denying Motion for Relief From Settlement Agreement

#### 1. HRCP Rule 60(b)(3)

Miyake asserts that the circuit court erred in denying Miyake's August 15, 2012 Motion for Relief From Settlement Agreement brought under HRCP Rule 60(b)(3). The circuit court denied Miyake's motion in its order issued on November 15, 2012.

Pursuant to HRCP Rule 60(b)(3), Miyake contends that the Wrights never intended to perform under the indemnity agreement and therefore misrepresented their intentions, because the Wrights disagreed that the indemnity provision in the Settlement Agreement indemnified Miyake against the counterclaims of Samuel S. Kiyabu dba S. Kiyabu Construction **(Kiyabu)**, in a separate litigation between Miyake and Kiyabu. That separate litigation was not consolidated with the three civil actions in this case, but is related to the construction of the Wrights' home.[8]

> HRCP Rule 60(b)(3) provides:
>
> **(b) Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]

---

[8]  On March 12, 2009, in Civil No. 09-1-094(3), Miyake filed a Complaint against Kiyabu. On June 1, 2009, Kiyabu filed a Counterclaim against Miyake.

To obtain relief under HRCP Rule 60(b)(3), "the movant must, (1) prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct[, and] (2) establish that the conduct complained of prevented the losing party from fully and fairly presenting his case or defense." Kawamata Farms, Inc. v. United Agri Prods., 86 Hawai'i 214, 252, 948 P.2d 1055, 1093 (1997) (citation omitted).

Miyake contends it should be relieved from its duties under the settlement agreement because the Wrights falsely represented their mutual indemnity agreement on the record. Miyake points to statements in the Wrights' Memorandum in Opposition to Miyake's Motion for Relief From Settlement Agreement, filed on September 17, 2012, as evidence of the Wrights' misrepresentations to Miyake about their intentions to perform under the indemnity provision. The following are the Wrights' statements that Miyake points to as establishing the Wrights' misrepresentations:

> Miyake incorrectly indicates that "the Wrights misrepresented (intentionally or negligently) their agreement to indemnify [Miyake] against the Kiyabu Counterclaim to induce [Miyake] to enter into the Settlement Agreement." As indicated and confirmed in [Shimomura's] Motion for Reconsideration and Relief from Order filed on July 18, 2012, all of the parties understood and agreed that the intent of the settlement was that all of the parties would receive complete releases from each other and that parties would not be mired in any further litigation as a result of actions by a settling party . . . . The intention that no party would indemnify Miyake in its pursuit of claims in the ongoing Kiyabu Lawsuit could not have been made clearer to Miyake and, as such, there was no misrepresentation by the Wrights. Any suggestion now by Miyake that it entered into the instant settlement unaware of this, is disingenuous at best.

(Emphasis added.) The above statements merely provide the Wrights' position with regard to the indemnity agreement. Both Despins and Shimomura, in other documents, state a similar understanding that no party agreed it would indemnify Miyake from claims in its litigation with Kiyabu and the purpose of the Settlement Agreement was to release all claims against all parties to the Settlement Agreement.

For example, prior to Miyake's Motion for Relief From Settlement Agreement, on July 18, 2012, Shimomura filed a Motion

for Reconsideration and Relief from Order Enforcing Settlement Agreement. In its Memorandum in Support of Motion, Shimomura stated that Miyake's attempt to tender indemnification from the Kiyabu lawsuit under the terms of the Settlement Agreement was a "distorted interpretation of the indemnity provision[,] is contrary to the parties' contemplated scope of the indemnity[,] and violates the spirit behind the settlement reached on January 25, 2012." Shimomura further stated that the intent of the Settlement Agreement was "that the parties would receive complete releases from one another." Thus, the Wrights' statements that Miyake points to do not establish any misrepresentations.

Next, Miyake contends under the "objective standard" set forth in Standard Management, Inc. v. Kekona, 99 Hawai'i 125, 53 P.3d 264 (App. 2001), that the Wrights cannot claim that they never misrepresented their intentions because they never stated on the record that they did not intend to indemnify Miyake against any claims made by Kiyabu. However, Kekona addresses a different issue than the issue in this case. Miyake quotes from portions of Kekona in which this court addresses whether "a binding settlement was in fact formed upon the mutual assent of both parties." Id. at 134, 53 P.3d at 273. In this appeal, the issue before this court is not whether there was mutual assent to form a binding settlement agreement. Rather, a binding settlement agreement was established when the circuit court issued its Order Enforcing Settlement Agreement on June 20 2012, and no party appealed from that order. Here, the issue on appeal is whether Miyake should be relieved from the June 20, 2012 Order Enforcing Settlement Agreement under HRCP Rule 60(b)(3) because of alleged misrepresentations by the Wrights. Thus, the "objective standard" from Kekona is inapplicable to this appeal.

Miyake also asserts arguments in its opening brief that the summary judgment standard should apply. In the alternative, Miyake contends if summary judgment is not warranted, Miyake is entitled to an evidentiary hearing on any material questions of fact. We disagree. Miyake did not appeal from the June 20, 2012 Order Enforcing Settlement Agreement and cannot now contest that order. The subject November 15, 2012 order relevant to this

appeal was made pursuant to HRCP Rule 60(b)(3). Therefore, the summary judgment standard is inapplicable to this appeal.

Finally, we find no merit in Miyake's other contentions that there were misrepresentations or fraud on the part of the Wrights in entering into the Settlement Agreement.

Miyake fails to show that the Settlement Agreement was obtained through fraud, misrepresentation, or other misconduct. Therefore, the circuit court did not abuse its discretion when it denied Miyake's Motion for Relief from Settlement Agreement pursuant to HRCP Rule 60(b)(3).

### 2. HRCP Rule 60(b)(5)

Pursuant to HRCP Rule 60(b)(5)[9] Miyake contends the circuit court should have granted Miyake's Motion for Relief From Settlement Agreement because Miyake's duty to pay the Wrights under the Settlement Agreement had been discharged and no longer existed.

HRCP Rule 60(b)(5) provides that the court may relieve a party from a final judgment if "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application[.]"

In its Motion For Relief From Settlement Agreement filed in the circuit court, Miyake argued that the Wrights breached the Settlement Agreement by refusing to sign it and thus Miyake's suretyship status was somehow impaired and its obligations under the Settlement Agreement were discharged. On appeal, Miyake cites to provisions in the Restatement (Third) of Suretyship and Guaranty, as well as Honolulu Roofing Company v. Felix, 49 Haw. 578, 605, 426 P.2d 298, 317 (1967), to argue that its suretyship status was impaired and it was entitled to a pro tanto discharge of its duty to pay the Wrights under the Settlement Agreement. Miyake did not raise arguments based on

---

[9] In its opening brief, Miyake does not cite to HRCP Rule 60(b)(5) as the basis for its argument. However, in its Motion for Relief from Settlement Agreement, Miyake's argument for discharge is made pursuant to HRCP Rule 60(b)(5).

the Restatement (Third) of Suretyship and Guaranty or <u>Felix</u> in its Motion For Relief From Settlement Agreement, thus Miyake waived these arguments. <u>See</u> <u>Assoc. of Apartment Owners of Wailea Elua v. Wailea Resort Co.</u>, 100 Hawai'i 97, 107, 58 P.3d 608, 618 (2002) ("Legal issues not raised in the trial court are ordinarily deemed waived on appeal.").

In any event, the record does not reflect that the Wrights refused to sign the Settlement Agreement. Miyake contends that the Wrights' refusal to sign the settlement agreement occurred on July 6, 2012, citing to an email exchange between counsel for the parties.

The email exchange, which occurred after the circuit court entered its Order Enforcing Settlement Agreement on June 20, 2012, consisted of the following. On July 2, 2012, counsel for Despins sent an email to counsel for Miyake stating:

> I have Despins signed page. [Counsel for the Wrights] is obtaining the Wrights and will send it to me. [Counsel for Shimomura] is also getting Shimomura's and will send it to me. Do you want to send over Miyake's signature. I will compile all and send out to everyone with the Final Settlement Agreement and exhibits.

Counsel for Miyake responded to counsel for Despins on the same day stating "[p]lease advise when you receive Wrights' and Shimomura's signatures."

On July 5, 2012, counsel for Miyake emailed counsel for Despins asking "[a]ny response?" On the same day, counsel for Despins responded to counsel for Miyake stating, "I should be getting the Wright's [sic] signature today. I have not heard from [Counsel for Shimomura] on the status of Shimomura's signature."

On July 6, 2012, counsel for Miyake emailed counsel for Despins asking "[d]id you get the Wrights' signatures yet?" About an hour later, counsel for Miyake again wrote an email to counsel for Despins stating "[l]ooks like you might need the Court's assistance if you don't get all signatures by today. Let's set up a status conference for Monday." Within the hour on the same day, counsel for Shimomura responded to counsel for Miyake stating "I was not aware that there is a specific deadline to exchange our respective client's signatures. However, I have

been informed that Shimomura's signed agreement is in the mail. We will provide you with a copy as soon as we receive it." Also within the hour counsel for the Wrights responded to counsel for Miyake stating "I was also unaware of any deadlines. In any event, does everyone have their checks?" The response from the Wrights stating they were unaware of a deadline and asking if everyone has their checks ready is apparently what Miyake suggests constitutes the Wrights' refusal to sign the Settlement Agreement and thus, the discharge of Miyake's responsibility under the Settlement Agreement.

The circuit court's June 20, 2012 Order Enforcing Settlement Agreement did not specify a deadline for the parties to sign the Settlement Agreement. Thus, the Wrights' statement that they were unaware of any deadlines and asking if everyone had their checks, does not appear to be a refusal to sign the Settlement Agreement. Miyake's arguments do not support relief under HRCP Rule 60(b)(5).

The circuit court did not abuse its discretion when it denied Miyake's Motion for Relief from Settlement Agreement based on HRCP Rule 60(b)(5).

C.    **Order Granting Motion to Compel Compliance With Settlement Agreement**

Miyake contends that the circuit court erred when it granted the Wrights' Motion to Compel Compliance with Settlement Agreement because the Wrights' motion "was based solely upon false evidence taken out of context[.]" In addition, Miyake contends the Wrights' motion should have been denied because Miyake's Memorandum in Opposition to the Wrights Motion to Compel Compliance of Settlement Agreement attached a declaration of Junsuke Otsuka "showing specific facts that genuine issues of material fact existed."

The Wrights' August 10, 2012 Motion to Compel Compliance With Settlement Agreement was filed after the circuit court filed the Order Enforcing Settlement Agreement on June 20, 2012. In their motion, the Wrights sought an order compelling payment of the amounts owed to them under the Settlement Agreement. Miyake's arguments on appeal are again essentially a

15

challenge to the June 20, 2012 Order Enforcing Settlement Agreement, from which no party appealed. Miyake's arguments thus lack merit.

### D. Order Denying Motion to Set Aside Garnishee Summons

Miyake contends that pursuant to HRS § 652-1(b) (1993), the circuit court lacked jurisdiction and erred when it denied Miyake's Motion to Set Aside Garnishee Summons because there was not a valid judgment in place at the time the Garnishee Summonses were entered.

The Wrights contend that the circuit court did not err when it denied the Motion to Set Aside Garnishee Summons because the November 15, 2012 Order Granting Motion to Compel Compliance with Settlement Agreement was an appealable judgment under HRCP Rule 54(a).[10] Therefore, the Wrights contend that their motions satisfied the requirements for post-judgment garnishment under HRS Chapter 652. In our view, however, whether an order is an appealable "judgment" under HRCP Rule 54(a) is a materially different issue than whether there is a judgment which can be enforced by way of garnishment.

HRS § 652-1(b) provides:

> (b) After judgment. Wages may be garnisheed after judgment at the rate specified in subsection (a). _In any action brought by a creditor against a debtor, the creditor may, after judgment rendered in the creditor's favor, request the court to summon any garnishee to appear personally, upon a day appointed in the summons for hearing the cause as against the garnishee, and make full disclosure;_ or in any action brought in the district court by a creditor against a debtor, the creditor may, ten days after judgment rendered in the creditor's favor, file a certified copy of the judgment and the creditor's affidavit as to the amount due and unpaid on account of the judgment with the employer of the judgment debtor and the employer shall thereupon either file a disclosure within one week or shall withhold from the wages of the judgment debtor the amounts as provided herein and pay the same to the judgment creditor.

(Emphasis added.) Additionally, HRS § 652-2 (1993 & Supp. 2015) provides in pertinent part: "[i]f judgment is rendered in favor

---

[10] HRCP Rule 54(a) provides: "'Judgment' as used in these rules includes a decree and any order from which an appeal lies. A judgment shall not contain a recital of pleadings, the report of a master, or the record of prior proceedings."

of the plaintiff, and likewise in all cases in which the garnishee is summoned after judgment, the garnishee fund, or such part thereof as may be sufficient for that purpose, shall be liable to pay the same."

"The primary purpose of a garnishment is to enforce the payment of a judgment." Int'l Sav. & Loan Ass'n. v. Wiig, 82 Hawai'i 197, 202, 921 P.2d 117, 122 (1996). Further, "[a] garnishment 'is an incident to or an auxiliary of judgment rendered in [the] principal action, and is resorted to as a means of obtaining satisfaction of judgment by reaching credits or property of judgment debtor.'" Id. (quoting Blacks Law Dictionary 680 (6th ed. 1990)); see also Frank F. Fasi Supply Co. v. Wigwam Inv. Co., 308 F. Supp. 59, 61 (D. Haw. 1969) (stating garnishment "generally pertains to the satisfaction of an indebtedness out of property or credits of the debtor in the possession of, or owing by, a third person"); 6 Am. Jur. 2d Attachment and Garnishment § 2 (2008) ("'Garnishment' is a proceeding in which the property, money, or credits of a debtor that are in the possession of another, i.e., the garnishee, are applied to the payment of a debt."); 6 Am. Jur. 2d Attachment and Garnishment § 44 (2008) ("As a general rule, a judgment must be definite and certain to be enforceable in a garnishment proceeding[.]"). Further, "[t]he remedy of garnishment under our statute is limited to actions brought by a 'creditor' against his 'debtor.'" Welsh v. Woods, 47 Haw. 252, 254, 386 P.2d 886, 887 (1963).

Thus, to execute on a judgment in garnishment proceedings, a creditor must first obtain a judgment in the creditor's favor that specifies payment by the debtor to the creditor. See Wiesenberg v. Univ. of Haw., 138 Hawai'i 210, 217, 378 P.3d 926, 933 (2016)(recognizing that additional language in an amended judgment, including language that specified amounts owed from the plaintiff to the defendant, "creates new obligations and legal consequences that did not exist under the Original Judgment[,]" including that the defendant could execute on the amended judgment by initiating a garnishment action); DeYoung, 92 Hawai'i at 353, 992 P.2d at 48 ("It is well

17

established that under our garnishment statutes, HRS Chapter 652, the debt must be owing at the time of the service of the garnishee process upon the garnishee, and that if the debt is contingent, the garnishment lien does not attach.")(citation and internal quotation marks omitted).

On December 21, 2012, the Wrights filed a Motion for Entry of Judgment. On February 11, 2013, the circuit court filed the Order Granting Wrights' Motion for Entry of Judgment. However, based on a review of the record, a judgment was never entered.

Although the Order Compelling Compliance with Settlement Agreement was an appealable order and thus a "judgment" as defined in HRCP Rule 54(a), it did not constitute a judgment for purposes of HRS §§ 652-1(b) and 652-2. The Order Compelling Compliance with Settlement Agreement was not otherwise a judgment and did not order Miyake to pay any sum to the Wrights. The order simply concluded that the Motion to Compel Compliance with Settlement Agreement was granted and it further ordered that "all parties shall submit their signature pages to [counsel for Despins] no later than October 2, 2012." The Clerk of Court was directed and ordered to sign the settlement agreement on behalf of any party that did not submit their signature pages by November 13, 2012. Even after the Settlement Agreement was fully executed, with the Court Clerk signing for Miyake, this did not convert the agreement to a judgment. Rather, the parties then had a binding contractual agreement. See Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawai'i 277, 288, 172 P.3d 1021, 1032 (2007) (stating that settlement agreements are a species of contract and are governed by principles of contract law).

Given the above, we conclude that the circuit court erred when it denied Miyake's Motion to Set Aside Garnishee Summons.

**E.  Stipulation for Dismissal**

Miyake contends that the circuit court erred when it entered the Order to Execute a Stipulation for Dismissal with Prejudice. Miyake contends that the stipulation must be vacated

18

because it was entered *sua sponte*, while an appeal was pending, and without notice to Miyake of the court's decision to grant complete rather than partial dismissal, thereby denying Miyake its due process rights.

The Settlement Agreement provides:

> 15. <u>Dismissal With Prejudice.</u> Concurrently with the execution and delivery of this Settlement Agreement and subject to paragraph 11 above, counsel for the Parties shall execute and cause a stipulation for dismissal with prejudice to be filed in the Consolidated Lawsuits in accordance with Rule 41(a)(1)(B) and (c) of the Hawai'i Rules of Civil Procedure.[11]

On June 14, 2013, the Wrights filed a Motion to Compel Miyake to Execute Stipulation for Partial Dismissal. In the Memorandum in Support of Motion, the Wrights requested the circuit court enter an "Order enforcing the terms of the parties' settlement agreement by compelling Miyake to execute the Stipulation for Partial Dismissal of all claims by and against Despins and Shimomura or . . . to have the Clerk of the Court execute said document on behalf of Miyake." In the alternative, the Wrights requested that the circuit court dismiss the claims by and against Shimomura and Despins pursuant to HRCP Rule 41.

On June 24, 2013, Miyake filed its Memorandum in Opposition to Motion to Compel Miyake to Execute Stipulation for Partial Dismissal. In the memorandum Miyake argued that the circuit court was not authorized to execute a "stipulation for <u>partial</u> dismissal" because the terms of the settlement agreement provided for a "stipulation for dismissal." Thus, to add the term "partial" constituted an "unauthorized alteration, amendment, modification or change to Paragraph 15 of the Settlement Agreement[.]" Miyake further argued that the

> Wrights' proposed Stipulation is unenforceable and must be rejected because (1) the title and text fail to identify the Wrights and Miyake as parties being dismissed, (2) it fails to identify all of the claims being dismissed by the Wrights and Miyake against Despins and Shimomura and (3) it fails to identify the parties and claims that remain in the action or to state that there are no remaining parties and/or claims in the text.

---

[11] This is quoted from the final unsigned Settlement Agreement attached to Miyake's Motion for Order Directing Court Clerk to Sign Settlement Agreement. The signed Settlement Agreement is not in the record, however the parties do not dispute that this language is in the Settlement Agreement.

On July 3, 2013, the circuit court held a hearing on the Motion to Compel Miyake to Execute a Stipulation for Partial Dismissal. At the hearing, with regard to a stipulation for partial dismissal, Miyake stated:

> We never agreed to sign this. We agreed to sign a stipulation for dismissal, that's true. But this was before [counsel for the Wrights], acting in bad faith, stalled that Kiyabu trial, and now we are sitting here today without a trial date.
>
> Now, your Honor, the plain fact is that none of the parties agreed to sign a partial stipulation for dismissal and the plain fact is that if this partial stipulation for dismissal is granted, then Despins and Shimomura are going to be put into bad faith if they are forced to sign it; and the case still won't be over.
> . . . .
> So, your Honor, we believe that the motion should be denied; and that if there is going to be a motion to compel the execution of a stipulation, that it should be, if at all, on the one which we agreed to sign, and not on one. which nobody has agreed to sign.

The circuit court stated the following at the hearing:

> Here, in the Court's view, the parties did enter into agreement, a settlement agreement. This particular motion is asking the Court to issue an order with respect to a stipulation for partial dismissal.
>
> What I am going to do today is to order that the parties sign the stipulation that they agreed to sign -- the stipulation for dismissal that they agreed to sign at the time they entered into settlement agreement; and that relates to all of the parties.
>
> So the order I am going to issue at this time is an order that requires that to occur; and if doesn't occur . . . then the clerk of the court is authorized to execute the stipulation for dismissal that the parties agreed to. When I say, "stipulation for dismissal," I am talking about the stipulation the parties agreed to originally, not the stipulation for partial dismissal.

On July 15, 2013, a Stipulation for Dismissal With Prejudice of All Claims and All Parties was filed in which the Clerk of the Court signed for Miyake. Thereafter, on September 3, 2013, the circuit court filed the Order to Execute Stipulation for Dismissal With Prejudice.

Based on the record, Miyake's contention that the circuit court entered the order *sua sponte* and denied Miyake's due process rights is without merit. In Miyake's Memorandum in Opposition and at the hearing on the motion, Miyake argued that the Settlement Agreement called for a stipulation for dismissal with regard to all parties and not a partial stipulation for

dismissal. Thus, the circuit court essentially entered an order consistent with Miyake's argument.

Miyake also contends that the circuit court did not have jurisdiction to entertain the Wrights' motion because Miyake had an appeal pending.

"Generally, the filing of a notice of appeal divests the trial court of jurisdiction over the appealed case." TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai'i 243, 265, 990 P.2d 713, 735 (1999) (citation omitted). However, notwithstanding the general rule, "the trial court retains jurisdiction to determine matters collateral or incidental to the judgment, and may act in aid of the appeal." Id.

In this case, Miyake did not appeal from the Order Enforcing Settlement Agreement. Instead Miyake appeals from several post-judgment orders. Thus, the pending appeals did not divest the circuit court of jurisdiction to address the Wrights' motion related to further enforcement of the Order Enforcing Settlement Agreement, which was not part of Miyake's appeals.

Therefore, the circuit court did not err when it entered the Order to Execute a Stipulation for Dismissal with Prejudice.

**IV. Conclusion**

Based on the foregoing, the following orders entered by the Circuit Court of the Second Circuit are affirmed:

(1) the "Order Denying Defendant and Third-Party Plaintiff Miyake Concrete Accessories, Inc.'s Motion for Relief from Court Ordered Settlement Agreement Filed on August 15, 2012; Order Granting Plaintiffs Shaun and Annett Wright's Motion to Compel Compliance with Settlement Agreement and Order Filed on August 10, 2012," filed on November 15, 2012; and

(2) the "Order Granting in Part and Denying Without Prejudice in Part Plaintiffs Shaun and Annett Wright's Motion to Compel Defendant Miyake Concrete Accessories Inc. to Execute a Stipulation for Partial Dismissal With Prejudice in Accordance With the Parties' Settlement Agreement and for Award of Attorneys' Fees and Costs Filed June 14, 2013," filed on September 3, 2013.

We vacate the "Order Denying Defendant and Third-Party Plaintiff Miyake Concrete Accessories, Inc.'s Motion to Set Aside Garnishee Summons Filed February 13, 2013, and to Release Garnishees Bank of Hawaii, First Hawaiian Bank, and Central Pacific Bank, Filed February 21 2013, and Garnishee Order," filed on April 8, 2013.

This case is remanded to the circuit court for further proceedings consistent with this Memorandum Opinion.

DATED:  Honolulu, Hawaiʻi, November 30, 2016.

On the briefs:

Samuel P. King, Jr.,
    and
Roy Y. Yempuku,
for Miyake Concrete Accessories, Inc.

Michael D. Tom,
Mark K. Morita,
(Tom Petrus & Miller, LLLC)
for Shaun Wright and Annett Wright.

Jeffre W. Juliano,
Lahela H. F. Hite,
(O'Connor Playdon & Guben, LLP)
for Despins General Construction, Inc.

Presiding Judge

Associate Judge

Associate Judge

22